**Steven Raymond BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0852–94.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 13, 1995.

Robert McCrarey, Fort Worth, for appellant.

Charles M. Mallin, Asst. Dist. Atty., Fort Worth, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

A tense confrontation with police officers in the parking lot of a Fort Worth motel eventually led to appellant's arrest for aggravated assault. While making an inventory of his automobile and its contents, the police discovered two large burlap bags in the trunk, wrapped in plastic and containing more than eight pounds of usable marihuana. On the strength of this evidence, appellant was later tried and convicted for illegally possessing the marihuana and his punishment assessed at confinement in the penitentiary for a term of 40 years. *See* Tex.Health & Safety Code Ann. § 481.121(a), (b)(4); Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989.

Under our law, a person may not be convicted for possession of a controlled substance unless it is proved that he possessed the substance "intentionally or knowingly." *Id.* On direct appeal of the instant cause,

appellant argued that the evidence adduced at trial did not prove this essential element of the offense because it did not "affirmatively link" him with the marihuana found in the trunk of his car. The State responded by urging the Second Court of Appeals not to apply the so-called "affirmative links" test, contending that it had been defunct since this Court's opinion in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). Because the Court of Appeals agreed that *Geesa* had effectively undermined our "affirmative links" jurisprudence, it refused to be bound by the precedent upon which appellant relied, and affirmed his conviction. *Brown v. State*, 878 S.W.2d 695 (Tex.App.—Fort Worth 1994). We granted appellant's petition for discretionary review of this holding because there is disagreement among the courts of appeals concerning the current viability of case law requiring proof of an "affirmative link" in drug possession cases. Tex.R.App.Proc. 200(c)(1). *Compare, e.g., Eaglin v. State*, 872 S.W.2d 332 (Tex.App.—Beaumont 1994) *with Villarreal v. State*, 865 S.W.2d 501 (Tex. App.—Corpus Christi 1993).

The genesis of our jurisprudence on this subject is often traced to *Haynes v. State*, 475 S.W.2d 739, 742 (Tex.Crim.App.1971), wherein Judge Odom, writing for a unanimous Court, opined that the only thing required for conviction in drug possession cases is that "an affirmative link be shown between the person accused of possession and the narcotic drug." This perfunctory remark was meant to neutralize, without much ado, Haynes's reliance on several precedents, each of which counselled that drug convictions depending on circumstantial evidence should be reversed unless the evidence is sufficient to exclude all reasonable hypotheses inconsistent with guilt. By claiming that this rule required no more than proof of an "affirmative link" between the accused and the contraband, the Court was able to affirm Haynes's conviction without any detailed analysis under the "outstanding reasonable hypothesis" test.

But holding that the accused must be affirmatively linked to a drug says nothing about how strong that link must be. The Court's "affirmative link" remark in *Haynes* merely identified what the evidence needed to show in order to prove that Haynes knowingly possessed a controlled substance. It made no attempt to explain why the evidence was persuasive enough in that case to exclude every other reasonable hypothesis. This shortcoming of our opinion in *Haynes* has encouraged a false belief that the "outstanding reasonable hypothesis" standard can be reduced in drug possession cases to a simple, abbreviated description of the offensive elements. Clearly, this is not true in the abstract and, even following our decision in *Haynes*, it has not been true in practice.

At the time *Haynes* was decided, the "outstanding reasonable hypothesis" formula had been a significant feature of evidentiary review in circumstantial cases of all kinds for more than a hundred years. *See Perkins v. State*, 32 Tex. 110 (1869). Juries were routinely instructed in such cases not to convict unless they believed that the circumstances "exclude[d], to a moral certainty, every other reasonable hypothesis except the defendant's guilt[.]" 1 *Branch's Annotated Penal Code* § 373.1 (2d. ed. 1956); *Thomas v. State*, 171 Tex.Crim. 54, 344 S.W.2d 453, 455 (1961). And courts reviewed the sufficiency of evidence on appeal by much the same standard. *E.g., Harroll v. State*, 135 Tex.Crim. 65, 117 S.W.2d 103 (1938); *Kunde v. State*, 22 Tex. App. 65, 3 S.W. 325, 331 (1886).

Gradually, however, most American jurisdictions came to believe that circumstantial evidence did not really deserve such special treatment. The United States Supreme Court had long held that no different standard of proof was required in federal prosecutions relying on such evidence, *Holland v. State*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and, over the years, many states followed suit. In each instance, the reason given was basically the same. Telling jurors that they should not convict on the basis of circumstantial evidence unless it affirmatively excludes other hypotheses suggests that such evidence is less trustworthy or persuasive than direct evidence, and that a higher standard of proof should therefore apply when the State relies on it. *See Griffin v. State*, 614 S.W.2d 155, 159 n. 5 (Tex.Crim. App.1981).

But courts increasingly came to realize that, as an empirical matter, circumstantial

evidence often has equal or even greater probative value than direct evidence. And because Texas law does not actually require that jurors in criminal cases have any more confidence in their verdicts of guilty when the evidence is circumstantial, a jury instruction to treat such evidence differently is not really necessary to protect any rights of the defendant or to accomplish any other important objectives of the system. Accordingly, in 1981, we stopped requiring it. *Hankins v. State*, 646 S.W.2d 191 (Tex.Crim.App.1981) (opinion on rehearing).

But we did not immediately stop using the standard as a basis for appellate review of evidentiary sufficiency. For fully another decade we remained open to the argument that a jury verdict may not stand whenever the evidence does not exclude other reasonable hypotheses inconsistent with guilt. Doing so seemed acceptable to us as a means of implementing the federal due process requirement of evidentiary sufficiency, which holds that a conviction is unconstitutional unless "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). It was our considered view of this standard that, "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App. 1983) (opinion on rehearing).

But use of the "outstanding reasonable hypothesis" methodology ultimately also proved confusing and unworkable as an appellate standard. Application of the rule in individual cases was erratic and did not actually differ much in practice from the sufficiency review of cases not relying on circumstantial evidence. Moreover, it was clear that the Supreme Court did not require any such methodology under the Due Process Clause. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2792. Although the strength of inculpatory evidence is sometimes best expressed in terms of its power to exclude alternate hypotheses, enforcing a rule that evidence is otherwise never strong enough for conviction misappropriates to appellate judges some of the jury's authority to weigh evidence. This is particularly so when the standard of appellate review is at least superficially different than the standard of proof given in the jury charge. For these reasons, we finally abandoned altogether, in 1991, the "outstanding reasonable hypothesis" construct as a special rule of decision in circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991).

During the twenty-year interval between our first use of the phrase "affirmative links" in *Haynes* and our interment of the "outstanding reasonable hypothesis" standard in *Geesa*, we handed down no fewer than eighty opinions inquiring whether the evidence was sufficient to affirmatively link the accused with drugs. Most of these opinions do not even mention that the evidence is circumstantial or that its sufficiency might depend on the exclusion of other hypotheses. *E.g., Cude v. State*, 716 S.W.2d 46 (Tex.Crim.App. 1986); *Meeks v. State*, 692 S.W.2d 504 (Tex. Crim.App.1985); *Marsh v. State*, 684 S.W.2d 676 (Tex.Crim.App.1984); *Flores v. State*, 650 S.W.2d 429 (Tex.Crim.App.1983); *Olguin v. State*, 601 S.W.2d 941 (Tex.Crim.App. 1980); *Harrison v. State*, 555 S.W.2d 736 (Tex.Crim.App.1977); *Williams v. State*, 524 S.W.2d 705 (Tex.Crim.App.1974); *Payne v. State*, 480 S.W.2d 732 (Tex.Crim.App.1972). Instead, the analysis is generally confined to an examination of the record for any evidence which tends to prove that the accused was actually aware of his drug possession. When such evidence is found to exist and when it is considered to be of adequate probative weight, the Court then simply announces that it is sufficient for conviction. Otherwise, the conviction is reversed.

Some of our opinions during this time do, of course, establish a sort of rhetorical connection between the "outstanding reasonable hypothesis" test and the need to affirmatively link the accused with the drugs he is alleged to have possessed. It is typical of such opinions to hold that an affirmative link between the accused and the drugs is necessary to exclude "the reasonable hypothesis that appellant was entirely unaware of the presence of [the drugs]." *Humason v. State*, 728 S.W.2d 363, 367 (Tex.Crim.App.1987).

*See also Guiton v. State,* 742 S.W.2d 5 (Tex. Crim.App.1987); *McGoldrick v. State,* 682 S.W.2d 573 (Tex.Crim.App.1985). Such comments should not, however, be taken to mean that circumstantial evidence of a defendant's guilty knowledge was required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements. The "outstanding reasonable hypothesis" test did not ordinarily apply to circumstantial proof of culpable mental states at all. *Matson v. State,* 819 S.W.2d 839, 845–46 (Tex. Crim.App.1991); *Smith v. State,* 470 S.W.2d 696, 697 (Tex.Crim.App.1971). And, because the necessity of proving an affirmative link between the accused and the contraband in his possession is mainly to establish his knowledge or intent, specific exclusion of other possibilities was never really necessary under our "outstanding reasonable hypothesis" precedents. Accordingly, the language of our cases which suggests that a hypothesis of ignorance must be specifically excluded in drug cases is misleading. It is really only another way of saying that hypothetical ignorance can be disproven with satisfactory evidence of actual knowledge. It is true, of course, but unremarkable.

■ A cursory examination of the case law, therefore, reveals that *Haynes* and its progeny had no significant impact on the progress of our circumstantial evidence jurisprudence. It merely introduced the shorthand expression "affirmative link" to identify what must be proven in a prosecution for the possession of illegal drugs. Because, under our law, an accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly. Under our precedents, it does not really matter whether this evidence is direct or circumstantial. In either case it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.

In its brief to this Court, the State concludes its argument with the following observation.

While the idea of an affirmative link is probably a fairly accurate, non-technical way to describe how the mind goes about deciding in a circumstantial evidence case whether the defendant knowingly possessed drugs, there is always a risk that the shorthand statement of a concept will take on a life of its own.

And so it has. What everyone agrees was once just a phrase used by this Court to explain why the circumstantial evidence in a particular case was sufficient for conviction eventually burgeoned into something like a rule of law.

■ As might be expected in a system like ours, which relies heavily on precedent, the merely rhetorical comment "affirmative link" was repeated so often in other similar cases that it eventually came to be regarded as a doctrine in its own right. But the so-called "affirmative links" doctrine never actually acquired any of the characteristics typical of a legal rule. It has no peculiar methodology associated with its use. It does not assign the burden of persuasion in any particular way, prescribe a certain level of confidence, or map out a unique approach which distinguishes it from other rules of law for determining evidentiary sufficiency. It is still, just as it always was, only a shorthand expression of what must be proven to establish that a person possessed some kind of drug "knowingly or intentionally." The impetus to abandon it really arises from a dissatisfaction with the outcome of some cases in which this Court analyzed the sufficiency of evidence by observing that the proof must affirmatively link the defendant to the thing he is alleged to have possessed.

The instant cause is a perfect example. Much of the argument between the parties here is over the opinion of this Court in *Humason v. State,* 728 S.W.2d 363 (Tex. Crim.App.1987). Appellant maintains that *Humason* controls disposition of the instant cause because its facts are strikingly similar to those of this case. The State counters that *Humason* does not apply because it was decided under the "affirmative links" doctrine, which should now be considered defunct on account of our later holding in *Geesa.* But the plain truth is that our use of the

phrase "affirmative links" in *Humason*, just as in some of our other so-called "affirmative links" cases, was incidental to, not descriptive of, the analysis we actually performed.

Ironically, *Humason* is distinguished more by its extensive discussion of the "outstanding reasonable hypothesis" rule than by its "affirmative links" lineage. Humason, the driver and sole occupant of a pickup truck, was arrested for driving with a suspended license. On the front seat next to him, the police found an open gym bag containing, among other things, a vial of cocaine. After observing that Humason could not legally be convicted for possessing a controlled substance unless the evidence affirmatively linked him to the cocaine, the Court then identified the case as depending on circumstantial evidence and opined that the evidence linking Humason to the cocaine was not sufficient for conviction because it did not exclude all other outstanding reasonable hypotheses.

Judge W.C. Davis, writing in dissent, challenged this analysis, not for its requirement that the evidence affirmatively link Humason with the cocaine, but rather for insisting that it do so persuasively enough to exclude other hypotheses. He argued that the Court should not implement its "outstanding reasonable hypothesis" standard so as to require more persuasive proof in circumstantial cases, and convincingly demonstrated that the evidence against Humason was easily strong enough to affirmatively link him with the cocaine under many of our earlier opinions.

Cases like *Humason* are the reason we finally abandoned the "outstanding reasonable hypothesis" methodology altogether in 1991. Its view of the evidence is facile and counterintuitive. Even its application of the circumstantial evidence review standard seems unusually rigorous. But regardless of this, it is clearly no longer authoritative in light of *Geesa*, at least to the extent that it employs the "outstanding reasonable hypothesis" test at all. In short, the precedent upon which appellant relies is not, in any event, so dispositive of the instant cause as he supposes.

■ We do not mean by this that the State need no longer affirmatively link the accused with the controlled substance he is alleged to have possessed. The courts of appeals are not free simply to ignore the substantial body of precedent in this State which evaluates the sufficiency of evidence according to the success with which it proves such a link. Much of this precedent does not even purport to rely on the "outstanding reasonable hypothesis" argument and, therefore, apparently rests on an independent basis. Indeed, we have even recently held that evidence of extraneous transactions may be admitted in drug possession cases whenever they tend "to prove the requisite affirmative link to the contraband." *Saenz v. State*, 843 S.W.2d 24, 27 (Tex.Crim.App.1992). Accordingly, it is not fair to say that our opinion in *Geesa* significantly compromised our "affirmative links" case law. To the extent that the Second Court of Appeals in the instant cause thought otherwise, it was mistaken.

■ Nevertheless, some of our precedents, including *Humason*, do invoke the "outstanding reasonable hypothesis" standard in connection with a search for evidence linking the accused to illegal drugs. Clearly, any aspects of those cases which rely on that standard no longer control. The ultimate consequence is that each defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt.

■ Ordinarily, under these circumstances, we would remand the cause for further consideration by the lower appellate court in a manner consistent with our opinion. But, not surprisingly, the lower court's actual analysis of the case is already consistent with our opinion. Having concluded that the "affirmative links" doctrine is no longer viable, the Second Court of Appeals nevertheless could discern no actual difference between it and the sufficiency review applicable to criminal convictions in general. Thus, after abandoning the doctrine in theory, the court nevertheless proceeded to analyze the case by pursuing essentially the same method, examining the same circumstances, and evaluating their significance in basically the same way as scores of our "af-

firmative links" cases have done for a long time. We can find no fault in this process of reasoning which would justify a remand for further consideration.

The judgment of the Second Court of Appeals is, therefore, affirmed.

BAIRD, Judge, concurring on appellant's petition for discretionary review.

We granted review to answer the following question: Did *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), affect the "affirmative link" analysis used to determine whether the State proved the knowing or intentional possession of a controlled substance? After a lengthy and confusing recitation of some of the applicable law, the majority answers that question in the negative: "Accordingly, it is not fair to say that our opinion in *Geesa* significantly compromised our 'affirmative links' case law. To the extent the Second Court of Appeals in the instant case thought otherwise, it was mistaken." *Ante* at 748. In other words, the State still has the burden of "affirmatively link[ing] the accused with the controlled substance he is alleged to have possessed." *Ante* at 748. Finally, the majority concludes the Court of Appeals correctly, albeit *unknowingly*, applied the affirmative links analysis. *Ante* at 748.[1]

The majority opinion is the equivalent of putting a new coat of paint on an old car. The affirmative links doctrine remains the appropriate method of determining whether the State proved the controlled substance was knowingly or intentionally possessed. *Ante* at 747. In other words, *Geesa* had no effect on the affirmative links doctrine because the affirmative links doctrine stands independent of the outstanding reasonable hypothesis analytical construct of appellate review rejected in *Geesa*. Because the evidence in the instant case overwhelmingly establishes that appellant knowingly possessed the marihuana, *compare Humason v. State*, 728 S.W.2d 363 (Tex.Cr.App.1987), I agree the judgment of the Court of Appeals should be affirmed.

With these comments, I join only the judgment of the Court.

---

1. In the time between the opinions from the Court of Appeals and this Court in this case, the Second Court of Appeals has disapproved of *Brown*. In *Howell v. State*, 906 S.W.2d 248 (Tex.App.—Ft. Worth, 1995), the Court of Appeals stated:

    We have reconsidered this court's reasoning and holding in *Brown*, and we find nothing in the language or logic of *Geesa* that can be reasonably interpreted as expressly or impliedly rejecting the affirmative link element of proof in unlawful possession of controlled substance cases. The affirmative link analysis is not a "standard of appellate review" as we held in *Brown*, but rather an element of an unlawful possession of a controlled substance offense.... Accordingly, we disapprove of *Brown* to the extent it holds that the affirmative link analysis is a standard of appellate review and is no longer a viable element of proof in possession offenses.

    *Id.* at 251.