**L.T. ROBERTS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–96–00148–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 19, 1998.

Decided Feb. 20, 1998.

Kent A. Schaffer, Bires & Schaffer, Houston, for appellant.

Calvin A. Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

L.T. Roberts was convicted of the felony offense of possession with intent to deliver cocaine, a controlled substance. He was tried before a jury, which convicted him and set his punishment at twenty-five years' confinement and a fine of $75,000.00. Roberts challenges his conviction, contending that the evidence is legally and factually insufficient to prove that he possessed the cocaine as charged in the indictment; the trial court erred in overruling his claim that the State used its peremptory challenges in a racially discriminatory manner; the trial court committed reversible error in limiting the cross-examination of the arresting officer; and the court should have suppressed the evidence because the warrant failed to comply with Articles 18.06 and 18.10 of the Texas Code of Criminal Procedure. We overrule these contentions and affirm the judgment.

On August 4, 1993, a team of narcotics officers executed a search and arrest warrant on an automotive shop in search of cocaine. Roberts, the owner of the shop, and three other individuals were present when the officers arrived. One officer approached Roberts, who was standing in a bay doorway, and conducted a pat-down search and handcuffed him. After they searched the premises, an officer discovered a locked bank bag in a desk located in the shop office. An officer cut the bag open and found over 400 grams of cocaine. Thereafter, the officer returned to Roberts and searched him more thoroughly. He found a set of keys in Roberts' pants pocket. One of these keys fit the lock on the bank bag.

Roberts first contends that the evidence is legally and factually insufficient to support his conviction. In reviewing a challenge to both the legal and factual sufficiency of the evidence, we must first determine whether the evidence adduced at the trial was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996); *Gaffney v. State*, 937 S.W.2d 540, 541 (Tex.App.—Texarkana 1996, pet. ref'd). The standard for reviewing legal sufficiency is whether, after reviewing the evidence in the light most favorable to the verdict any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Royal v. State*, 944 S.W.2d 33, 35 (Tex.App.—Texarkana 1997, pet. ref'd); *Gaffney v. State*, 937 S.W.2d at 541. If the evidence is legally insufficient, the court must order an acquittal.

A factual sufficiency review is a question of fact. In conducting a factual sufficiency review, we review the fact finder's weighing of the evidence in an appropriately deferential way to avoid substituting our judgment for that of the jury. *Clewis v. State*, 922 S.W.2d at 135. We view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d at 135. When there is conflicting evidence, the fact

finder's verdict on such matters in generally regarded as conclusive. *Taylor v. State*, 921 S.W.2d 740, 746 (Tex.App.—El Paso 1996, no pet.). If the evidence is insufficient, we remand the cause for a new trial. *Gaffney v. State*, 937 S.W.2d at 541.

To support a conviction for possession of a controlled substance, the State must show that the accused exercised actual care, custody, or control over the substance, that he was conscious of his connection with it, and that he possessed the substance knowingly or intentionally. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). The evidence on these elements can be direct or circumstantial. *Id.* at 747. The State must establish that the accused's connection with the substance was more than just fortuitous. *Id.* Intent to deliver may be proved by circumstantial evidence. *Reece v. State*, 878 S.W.2d 320 (Tex.App.—Houston [1st Dist.] 1994, no pet.). When the contraband is not found on the accused's person or it is not in his exclusive possession, additional facts must affirmatively link him to the contraband. *McMillon v. State*, 940 S.W.2d 767, 769 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App.—El Paso 1995, pet. ref'd); *Green v. State*, 892 S.W.2d 220, 222 (Tex.App.—Texarkana 1995, pet. ref'd). The link, however, need not be so strong that it excludes every other reasonable hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d at 748. The affirmative link ordinarily emerges from an orchestration of several factors and the logical force they have in combination. *Villegas v. State*, 871 S.W.2d 894, 896 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

The factors to be considered in determining whether an affirmative link exists are: (1) the defendant's presence when the search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7)

whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; and (12) whether the place the drugs were found was enclosed. *Green v. State*, 892 S.W.2d at 222; *Chavez v. State*, 769 S.W.2d 284, 288–89 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). The number of the factors is not as important as the logical force the factors have in establishing the elements of the offense. *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Possession need not be exclusive, and evidence showing joint possession with another is sufficient. *Martinez v. State*, 880 S.W.2d 72, 77 (Tex.App.—Texarkana 1994, no pet.).

Roberts argues that the evidence is insufficient to prove that he had care, custody, or control over the contraband or that he had knowledge of its presence. He points out that mere presence, by itself, at the scene of the search is not enough to support a conviction for possession of a controlled substance. *Herndon v. State*, 787 S.W.2d 408 (Tex.Crim.App.1990). Further, he argues that other people had access to both the building and the office where the cocaine was found, and that the only evidence linking him to the contraband is the key to the bank bag.

Contrary to Roberts' contentions, however, the evidence shows several affirmative links between him and the substance. First, he was at the place searched at the time of the search. *See Villegas v. State*, 871 S.W.2d at 896. Second, he was the owner and operator of the business in which the cocaine was found. Third, the cocaine was found in the desk drawer in the office. *See Washington v. State*, 902 S.W.2d 649, 652–53 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd) (finding substance in desk drawer of office is link even if other employees have access to the office). Fourth, there was a large amount of contraband. *Id.* Fifth and most important, Roberts had the key to the bank bag on his person at the time of the search. Roberts' possession of a key to a container with con-

traband reasonably implies his control over the contraband. *Christopher v. State*, 639 S.W.2d 932, 935 (Tex.Crim.App. [Panel Op.] 1982), *overr. on other grounds, Preston v. State*, 700 S.W.2d 227, 230 (Tex.Crim.App. 1985); *Hernandez v. State*, 867 S.W.2d 900, 905 (Tex.App.—Texarkana 1993, no pet.); *Garza Gonzalez v. State*, 783 S.W.2d 774, 777 (Tex.App.—Corpus Christi 1990, no pet.); *see also Trejo v. State*, 766 S.W.2d 381, 384 (Tex.App.—Austin 1989, no pet.). Sixth, because he had possession of the key to the bank bag, he had ready access to it. *Washington v. State*, 902 S.W.2d at 652–53. Seventh, there was no evidence that anyone else but Roberts had a key to the bank bag, and he had undeniable, clear access to the bank bag and control over the office and desk as its owner. *See cf. Garza Gonzalez v. State*, 783 S.W.2d at 777. We find adequate affirmative links between Roberts and the cocaine, and thus the evidence is both legally and factually sufficient to support his conviction.

Roberts also contends that the court should have sustained his challenge to the State's exercise of its peremptory challenges. At the conclusion of voir dire and before the jury was sworn, Roberts notified the court that he had challenges to the jury based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Roberts challenged the State's strikes of venire members two, seven, twenty, and twenty-nine as being racially motivated.

 In reviewing a *Batson* challenge, we review the record in the light most favorable to the trial court's rulings and determine if the court's action was clearly erroneous. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim.App.1991). A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that the trial court committed a mistake. *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex.Crim.App. 1989). The trial court is the fact finder at a *Batson* hearing, and it is his responsibility to weigh the evidence and determine the credibility of the witnesses. *Tompkins v. State*, 774 S.W.2d 195, 202 n. 6A (Tex.Crim.App. 1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104

L.Ed.2d 834 (1989). We therefore accord great deference to the trial court's rulings. *Robinson v. State*, 851 S.W.2d 216 (Tex.Crim. App.1991). If the exercise of even one peremptory challenge was racially motivated, however, the entire jury selection process in invalidated, and a new trial is warranted. *Keeton v. State*, 724 S.W.2d 58, 65 n. 5 (Tex. Crim.App.1987).

 A *Batson* review involves a three-step analysis. *Williams v. State*, 937 S.W.2d 479, 485 (Tex.Crim.App.1996). The first step requires the complaining party to make a prima facie case of racial discrimination. *Id.* (citing *Purkett v. Elem*, 514 U.S. 765, 767–69, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995)). A prima facie case of discrimination may be made by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson v. Kentucky*, 476 U.S. at 93–96, 106 S.Ct. at 1721– 23. After the complaining party makes his prima facie case, the second step requires that the proponent of the challenge come forward with a race-neutral reason for the strike. *Williams v. State*, 937 S.W.2d at 485. If the proponent of the strike can produce a race-neutral reason, then in the third and final step, the opponent of the strike has the ultimate burden of proving intentional discrimination.

 Here, the State did not question whether Roberts had made the prima facie case as required in step one of the *Batson* analysis. Rather, it immediately provided race-neutral explanations for its peremptory strikes when the strikes were first challenged by Roberts. Thus, the State waived its opportunity to challenge whether Roberts actually made a prima facie case of discrimination. *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.1992). Therefore, our analysis begins with step two of the *Batson* procedure. The State gave these reasons for striking the venire members: member two left blank his type of employment space, and he recognized Roberts from "the music business"; member seven put her name in the space designated for her spouse, which indicated she did not pay close attention; member twenty put his name in the wrong place and stated that he believed rehabilitation was

the main purpose of the criminal justice system; and member twenty-nine answered that he also felt that rehabilitation was the main purpose of the criminal justice system. All of these reasons are sufficient to carry the State's step-two burden of persuasion, as they are all race-neutral. *See, e.g., Hatchett v. State,* 930 S.W.2d 844, 846 n. 1 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd) (striking a prospective juror because he believes rehabilitation is the primary goal of punishment is a race-neutral reason); *Harper v. State,* 930 S.W.2d 625, 634 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (striking a prospective juror because he wrote his name in the space provided for his spouse is a race-neutral reason); *Thornton v. State,* 925 S.W.2d 7, 11 (Tex.App.—Tyler 1994, pet. ref'd) (striking a prospective juror because he is acquainted with the defendant is a race-neutral reason); *Satterwhite v. State,* 858 S.W.2d 412, 423 (Tex.Crim.App.1993) (striking a prospective juror because he failed to fully complete the juror information card is a race-neutral reason for a peremptory strike). Thus, our analysis moves forward to step three where the burden of persuasion rests on Roberts, who has always carried the burden of producing evidence, to prove that the State's proffered reasons were pretextual and that the State made a race-motivated peremptory strike.

 Because the ultimate burden of proving that the State exercised its peremptory challenges on a racial basis is on Roberts in step three, he must have provided the trial court with enough evidence that the State's race-neutral reasons were pretextual to make the court's ruling clearly erroneous. Roberts did nothing more than point out the allegedly racially-struck venire members and allege that they were struck because of their race.[1] In response to this, the State supported its challenges with race-neutral reasons and evidence that it consistently struck all jurors who evidenced the trait. We

therefore conclude that the trial court's ruling was not clearly erroneous.

 Roberts next contends that the trial court reversibly erred in refusing to allow him to confront and cross-examine a witness. The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront the witnesses against him. U.S. CONST. amend. VI; *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App.1996). The confrontation clause and cross-examination exist in part to ensure fairness in criminal proceedings. *Offor v. Scott,* 72 F.3d 30, 33–34 (5th Cir.1995). Through cross-examination, a defendant tests the believability of a witness and the truth of his or her testimony. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The United States Supreme Court has called cross-examination "the greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970).

 The right to cross-examination extends to any matter that could reflect on the witness' credibility. *Virts v. State,* 739 S.W.2d 25, 28 (Tex.Crim.App.1987). The right of an accused to cross-examine a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness' credibility. *Id.* at 29; *Alexander v. State,* 949 S.W.2d 772, 774 (Tex.App.—Dallas 1997, pet. ref'd). Thus, the scope of cross-examination should extend to all facts and circumstances that, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of

---

**1.** In his brief to this Court, Roberts argues that the State did not question several of the venire members that it struck, and that it did not strike prospective juror fifty, who also recorded his name in the space provided for his spouse. However, these arguments were not made to the trial court; thus, they should not be considered

when determining whether the trial court committed error in overruling a *Batson* challenge. *Cruse v. State,* 882 S.W.2d 50, 52 (Tex.App.—Houston [14th Dist.] 1994, no pet.); *see cf. Satterwhite v. State,* 858 S.W.2d 412, 424 (Tex.Crim.App.1993).

helping to establish only one side of the cause. *Carroll v. State*, 916 S.W.2d at 497–98; *Alexander v. State*, 949 S.W.2d at 774–75.

Although a defendant's right to confrontation and cross-examination is constitutionally safeguarded, the right is not absolute. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297, 309 (1973); *Huff v. State*, 897 S.W.2d 829, 839 (Tex.App.—Dallas 1995, pet. ref'd). The trial court retains great latitude in imposing reasonable limitations on cross-examination. *Virts v. State*, 739 S.W.2d at 28. The court may properly limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *Carroll v. State*, 916 S.W.2d at 497. When considering whether a trial court's decision to exclude testimony is error, we must determine whether the trial court abused its discretion. *Love v. State*, 861 S.W.2d 899, 903 (Tex.Crim.App.1993). This inquiry depends on the facts of each case. *Id.* at 904.

The officer in charge of the investigation testified that he did not properly document the seizure of the key to the bank bag, and that he did not properly keep it in the property room of the police station. Instead, he kept the key in his desk for a period of three years. During cross-examination of the officer, defense counsel questioned him about his reasons for keeping the key in his desk. The officer said he did so because in the past evidence had been found missing from the property room. Defense counsel then tried to elicit from the officer specific instances when evidence became missing from the property room. The State objected to this question on relevancy grounds, and the trial court sustained the objection. The defense counsel made an offer of proof in which he elicited that the officer could remember the name of only one case in which evidence was missing. The case named by the officer happened after the arrest of Roberts, and the officer admitted that it could not have been the reason for keeping the evidence in his desk. When further questioned by the State, the officer said that he had other experiences when evidence was missing from the property room, and these experiences had occurred before Roberts' arrest. At the conclusion of his offer of proof, Roberts once again asked if he could question the witness on this subject in front of the jury, and the trial court denied his request.

The attempted cross-examination of the officer on this issue was not harassing or prejudicial, it did not confuse the issues, it did not impair the safety of the officer, and it was not repetitive. The trial court limited Roberts' cross-examination because it felt that the issue of when the officer had experience with missing evidence was not relevant. We disagree. The officer made the issue relevant. When asked why he did not place the key in the property room, the officer responded that he did so because he had prior experience with evidence getting lost from the property room. This was an assertion of fact by the State's main witness against Roberts. Roberts had the right to impeach the officer, and any impeachment evidence would be relevant to the credibility of the witness. We therefore conclude that the trial court abused its discretion in limiting Roberts' cross-examination on this issue. *See cf. Alexander v. State*, 949 S.W.2d at 775.

That does not end our inquiry, however. The error must be harmful before a new trial is warranted. There is a three-part analysis for determining whether a trial court's error in limiting a defendant's cross-examination is harmful. *Love v. State*, 861 S.W.2d at 904; *Brooks v. State*, 900 S.W.2d 468, 473 (Tex.App.—Texarkana 1995, no pet.). We first assume that the damaging potential of the cross-examination was fully realized. Second, we review the error in connection with the following factors: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Love v. State*, 861 S.W.2d at 904. Third, we determine whether the error is harmless.

The facts of this case and the excluded evidence have already been summarized, so we will proceed to the harm analysis. First, we assume that the damaging potential of the cross-examination was fully realized. In doing so, we assume that the jury would have believed that the officer did not use the case, given as an example of when evidence was missing from the property room, as a reason to keep the key in his desk. Second, we review the error in connection with the five factors. *See Love v. State,* 861 S.W.2d at 906.

The officer's testimony was critical. He was the main witness and the lead investigator of the crime. He testified about the search and seizure of the main piece of evidence-the key to the bank bag. It is fair to say that Roberts would not have been convicted but for the officer's testimony.

The officer's testimony was not cumulative. Most of the background facts and evidence were admitted through him. Further, he was the only State's witness to testify about the key to the bank bag, which was seized from Roberts' person.

Another officer testified about the search of the garage and the seizure of the cocaine. Also, a chemist testified that the substance found in the bank bag was, in fact, cocaine. An employee with the Harris County Pretrial Services testified that in an interview Roberts admitted being the owner and operator of the garage where the officers seized the cocaine. Roberts produced no contradicting testimony concerning whether the key to the bank bag was found on Roberts.

Roberts was otherwise permitted to fully cross-examine the officer.

The State basically had the following evidence: (1) that Roberts was present at the location of the garage when the cocaine was seized; (2) he owned and operated the garage; (3) the police searched the garage and found a large quantity of cocaine in a bank bag located in a desk drawer in an office, all of which was unlocked except the bank bag; (4) Roberts had the key to the bank bag in his pocket when the officers searched him after finding the cocaine. There was no proof, however, that Roberts owned the building in which his business was operated, and several people had access to the office and the desk where the cocaine was found. It is fair to say that the whole case revolved around the key.

The third and final prong in the harm analysis requires this Court to determine, in light of the first two prongs, if the error in limiting the cross-examination was harmless beyond a reasonable doubt. Had Roberts been able to cross-examine the officer and impeach him, the jury would have heard that the officer may have been mistaken about a collateral issue. The officer gave a case name as an example of when evidence was found missing from the property room. Roberts successfully got the officer to admit that this case occurred after Roberts' arrest and could not have been a factor in the officer's decision to keep the evidence in his desk. The officer did testify that other cases, of which he could not remember the names, had occurred before Roberts' arrest. This impeachment went to the reason the key was kept in the officer's desk, which was collateral to the main issue. The main issue was why the key was found on Roberts. The impeachment effect was minimal at best, because the officer explained the inconsistency. We hold that, although the trial court abused its discretion in limiting the cross-examination, this error was harmless.

 Roberts' last main contention is that the trial court reversibly erred in overruling his motion to suppress evidence. A defendant seeking to suppress evidence has the initial burden of proof. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Ashcraft v. State,* 934 S.W.2d 727, 735 (Tex. App.—Corpus Christi 1996, pet. ref'd). The trial court is the sole trier of fact and judge of the credibility of the witnesses, including the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Howard v. State,* 932 S.W.2d 216, 218 (Tex.App.—Texarkana 1996, pet. ref'd); *Laca v. State,* 893 S.W.2d 171, 177 (Tex.App.—El Paso 1995, pet. ref'd). The trial court is free to believe or disbelieve any or all of the testimony. We reverse a trial court's ruling on a suppression hearing only if the trial court clearly abused its dis-

cretion. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991); *Howard v. State,* 932 S.W.2d at 218. We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Romero v. State,* 800 S.W.2d at 543. We do not engage in our own factual review, but merely decide whether or not the trial court's findings of fact are supported by the record. *Id.* If the findings are supported by the record, we are not at liberty to disturb them. Even if we would have reached a different result, as long as the trial court's ruling is at least within the zone of reasonable disagreement, we will not intercede. *DuBose v. State,* 915 S.W.2d 493, 496–97 (Tex.Crim.App. 1996). We only address the question of whether the trial court improperly applied the law to the facts. *Romero v. State,* 800 S.W.2d at 543. Should the trial court's decision be correct on any theory of law applicable to the case, it will be sustained. *Id.* This principle holds true even if the trial court gives the wrong reason for its decision, especially when the decision concerns the admission of evidence. *Id.*

The officer in charge of the search seized an assortment of keys with the wooden initials "L. T." attached to the key ring. The officer prepared an inventory listing the items seized at the garage. Although the cocaine was listed on the inventory, the keys were not listed. The officer also failed to take the evidence or the inventory list to the magistrate. Further, the keys were not placed in the property room at the police station, but rather were placed in the officer's locked desk drawer.

█ Roberts argues that the key to the bank bag should have been suppressed because a written inventory documenting all items seized was not prepared by the officer executing the warrant, nor was one left at the scene or delivered to a magistrate. Roberts also argues that the key to the bank bag should have been suppressed because the officer violated police department policy and kept the key in his desk drawer instead of the property room. He bases this argument on the fact that these factors directly impugn the integrity of the evidence.

Before an officer can take property from a place, he must prepare a written inventory of the property taken and present a copy of the inventory to the owner or other person in possession of the property. TEX.CODE CRIM. PROC. ANN. art. 18.06(b) (Vernon Supp.1998); *Gonzales v. State,* 743 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Also, when property that the officer is directed to search for and seize is found, he must take possession of the evidence and carry it before the magistrate. TEX.CODE CRIM. PROC. ANN. art. 18.09 (Vernon 1977). When the officer returns the search warrant, he must deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant. TEX.CODE CRIM. PROC. ANN. art. 18.10 (Vernon Supp.1998).

█ Although the requirements set forth in these provisions of the Code of Criminal Procedure appear to be mandatory, ministerial violations of the search warrant statutes do not vitiate the search warrant in the absence of a showing of prejudice. *Pecina v. State,* 516 S.W.2d 401, 404 (Tex.Crim. App.1974); *State v. Tipton,* 941 S.W.2d 152, 155 (Tex.App.—Corpus Christi 1996, pet. ref'd); *Turner v. State,* 886 S.W.2d 859, 864– 65 (Tex.App.—Beaumont 1994, pet. ref'd); *Green v. State,* 880 S.W.2d 198, 201 (Tex. App.—Texarkana 1994, no pet.); *Robinson v. State,* 771 S.W.2d 710, 712 (Tex.App.—Corpus Christi 1989, pet. ref'd). The two objectives of the law concerning search warrants are to ensure that there is adequate probable cause to search and to prevent a mistake in the execution of the warrant against an innocent third party. *Green v. State,* 799 S.W.2d 756, 757 (Tex.Crim.App.1990); *Green v. State,* 880 S.W.2d at 201. These objectives are not furthered by a rigid application of the rules concerning warrants, so the appellate court should review technical discrepancies with a judicious eye for the execution of the warrant. *Green v. State,* 799 S.W.2d at 757. In accordance with this general rule, courts have held that the failure of a police officer to deliver to the defendant an inventory of the property seized does not require suppression of the seized evidence absent a showing of prejudice. *Robles v. State,* 711 S.W.2d 752, 753 (Tex.App.—San Antonio 1986, pet. ref'd). Further, courts have held

that the failure of a police officer to deliver to the magistrate a return after the search and seizure does not require suppression of the seized evidence absent a showing of prejudice. *Pecina v. State,* 516 S.W.2d at 404; *Gonzales v. State,* 743 S.W.2d at 720; *Joshua v. State,* 696 S.W.2d 451, 457 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); *Rios v. State,* 623 S.W.2d 496, 499 (Tex.App.—Corpus Christi 1981, pet. ref'd). Roberts has not shown where he was prejudiced by the officer's failure to include the keys on the inventory or to give the return to the magistrate. Instead, he argues that the key was an important piece of evidence, and since the officer did not follow the Code of Criminal Procedure the integrity of the evidence was impugned, but he does not challenge the authenticity of the key or have any proof that the key was somehow changed. The officer authenticated the key, and it was properly admitted into evidence. Thus, we find no abuse of discretion in the trial court's ruling on the defendant's motion to suppress.

For the reasons stated, we affirm the judgment.