NO. 12-01-00346-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


ROBERT CLAYTON POAGE,
§
 APPEAL FROM THE 402ND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 WOOD COUNTY, TEXAS






MEMORANDUM OPINION


 

 Robert Clayton Poage ("Appellant") appeals his conviction for possession of a controlled
substance, methamphetamine, 400 grams or more, with intent to manufacture. In his sole issue on
appeal, Appellant asserts that the evidence is not legally or factually sufficient to support a
conviction. We affirm.


Background

 On January 25, 2001, Wood County sheriff's deputies executed a search warrant at the
residence of Melvin Jordan ("Jordan") in Quitman, Texas. The search revealed possible
methamphetamine product and a clandestine methamphetamine lab. Consequently, Jordan was
arrested. Thereafter, he agreed to cooperate with the investigators and told them that Appellant
owned the seized lab. At the request of Lieutenant Joyce Box ("Box"), supervisor of the Sheriff's
Department criminal investigations, Jordan made three recorded telephone calls to Appellant. At
the time Jordan made the calls, Appellant was unaware that the lab had been seized. In each call,
Jordan requested that Appellant come to his residence and pick-up the "stuff." The Wood County
Sheriff's Department conducted a warrant check and discovered that Appellant had an outstanding
warrant. Wood County sheriff's deputies conducted a stake-out of Jordan's residence, hoping that
Appellant would arrive. However, after several days, the stake-out was discontinued because
Appellant never came to the residence. Jordan was instructed that he was not to open the door if
Appellant arrived after the stake-out ended. Instead, he was to call 911 and the sheriff's office would
respond.

 On February 2, 2001, Jordan alerted the Sheriff's Department that Appellant had just left
Jordan's residence, driving a blue Suburban. Sheriff's Department Lieutenant J. L. Miller ("Miller")
was driving westbound on FM 778 near Quitman, Texas, when he saw a blue Suburban pass his
vehicle. After recognizing the vehicle because of information from the Sheriff's Department
dispatch, Miller radioed Officer Robert Holland ("Holland"), with the Quitman Police Department,
to stop the vehicle. Miller also told Holland about the warrant for Appellant's arrest. Holland
stopped the vehicle, a 1989 Chevrolet Suburban, in Quitman. Miller arrived at about the time
Holland stopped the vehicle, confirmed the driver was Appellant, and had Holland immediately
handcuff and arrest him. 

 After Appellant was secure, Miller "brought the two female [passengers] out of the vehicle." 
He checked the vehicle for weapons and found a small black bag in the front floor board of the
driver's side of the vehicle. When he opened the bag, Miller discovered another black bag inside
which contained two packages of what he believed to be methamphetamine, two loaded syringes,
several unloaded syringes, a spoon with residue, and various other objects. Further, Miller noticed
a very strong chemical odor similar to the smell of hydrous ammonia emanating from the vehicle. 
He also detected several other odors including ether. Additionally, Miller observed items through
the front and rear windshields of the Suburban, including bottles of ammonia and hoses, and noted
that the vehicle was packed full, "up to, over the driver's seat." However, Holland testified that most
of the items in the vehicle were covered up and some were in trash bags.

 Box arrived at the scene shortly after the stop and spoke to Miller, who presented her with
the black bag he found in the front floorboard. The Suburban was towed to the sheriff's office and
unloaded under Box's supervision. The seized items were locked in evidence, and the items inside
the Suburban were inventoried. (1) The contents found in the Suburban included Red Devil lye,
Sudafed and Actifed tablets, lithium batteries, blow torches, denatured alcohol, acetone, starter fluid,
numerous syringes (loaded and empty), a Pyrex bowl with a heating pad, propane bottles filled with
anhydrous ammonia, and a portable electric pack. Appellant was charged by indictment with
possession of a controlled substance, methamphetamine, 400 grams or more, with intent to
manufacture, enhanced by three prior felony amphetamine possession offenses. (2) 

 At trial, Miller testified that, during his thirty years of experience in law enforcement, he had
smelled chemical odors such as those emanating from the Suburban many times in the past. He also
testified that he believed the smells indicated the presence of chemicals used to produce
methamphetamine. Box testified that after Jordan was arrested, he implicated Appellant, claiming
that the materials found in the search of Jordan's residence were Appellant's and that Appellant
brought all of the discovered items to Jordan's house. Further, Box testified that, according to
Jordan, if Appellant came to Jordan's residence, Appellant would bring more chemicals and
equipment to cook more methamphetamine. However, Box also stated that Jordan never, to her
knowledge, called and asked Appellant to bring a methamphetamine lab from Dallas. Based on
Box's training and experience in narcotics, she testified that the items found in the Suburban were
either components of methamphetamine or equipment used in the manufacturing process by a
clandestine lab. 

 Box testified that she found an "open" title to the vehicle inside one of the bags and that the
title was unusual because the word "Suburban" was written across it. (3) She also described a black
organizer with a cell phone holder that she discovered inside the Suburban. The organizer contained
two birth certificates, one for Appellant and one for an Amber Michelle Poage, paperwork addressed
to "Robert Clayton," and a list, or "recipe of sorts," on the back of a piece of paper. Based on her
experience and training in narcotics, Box testified that the list appeared to be an attempt to work out
the proportions for ingredients needed to manufacture methamphetamine. 

 Claybion F. Cloud, III ("Cloud"), a forensic chemist with the Department of Public Safety
crime lab in Tyler, Texas, conducted a scientific analysis of substances discovered in the Suburban,
which included rock-like substances, loaded syringes, jars of liquids, solids and powders, powdering
substances in black bottles, residue on spoons, and a bag of red powder and pellets. Cloud found
a total of 2,666.98 grams containing methamphetamine that included the salts, optical isomers, and
salts of optical isomers of methamphetamine, along with any adulterants and dilutants. Based on his
training and experience, Cloud also testified regarding the two common ways to manufacture
methamphetamine, a cold or "Nazi" cook, and the red "p" and iodine cook. After viewing, in the
courtroom or through photographs, the items found in the Suburban, Cloud testified that there was
nothing lacking to manufacture methamphetamine except for an acidic gas used in the powdering-out
stage.

 Ultimately, Appellant was convicted by a jury of possession of a controlled substance,
methamphetamine, four hundred grams or more, with intent to manufacture. Appellant elected to
have punishment assessed by the court and was sentenced by the judge to thirty years of
imprisonment and a $10,000.00 fine. (4)


Evidentiary Sufficiency

Standard of Review

 "Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction." Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.- San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed.2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour v. State, 8 S.W.3d at 671. The conviction will be sustained "unless it is found to be
irrational or unsupported by more than a 'mere modicum' of the evidence." Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses
and of the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim.
App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the
jury's domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court
finds the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v.
Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed.2d 652 (1982). 

 After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing the factual sufficiency of the evidence,
a court examines all the evidence "without the prism of 'in the light most favorable to the
prosecution' and sets aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust." Id. at 134. The court must inquire whether a neutral
review of all the evidence, both for and against the verdict, establishes that the proof of guilt is so
manifestly weak as to undermine faith in the jury's resolution, or the proof of guilt, although
sufficient if taken alone, is greatly offset by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).

 Factual sufficiency review should be appropriately deferential to deter an appellate court from
replacing its judgment for that of the fact finder, and any examination of the evidence should not
substantially intrude upon the fact finder's role as the exclusive judge of the weight and credibility
given to witness testimony. Id. at 7; Clewis, 922 S.W.2d at 133. Wrong and unjust verdicts include
ones in which the verdict is "manifestly unjust," "shocks the conscience," or "clearly demonstrates
bias." Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The reviewing court
examines all of the evidence in the record pertaining to the factual sufficiency challenge, not just
evidence confirming the verdict. Id. at 164. The jury's determination on any conflicting evidence
is usually decisive. Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.- El Paso 1996, pet. ref'd).

 In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge "would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id.

Elements of the Offense

 In this case, Appellant was convicted for possession of a controlled substance,
methamphetamine, 400 grams or more, with intent to manufacture. The elements of the offense are
that (1) a person (2) knowingly (3) possesses with intent to manufacture (4) a controlled substance
listed in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.112(a) (Vernon Supp. 2001). 
To support a conviction for possession of a controlled substance, the State must prove (1) that the
accused exercised care, control, or custody over the substance, and (2) that the accused was
conscious of his connection with the substance and knew what it was. Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995); Roberts v. State, 963 S.W.2d 894, 898 (Tex. App.- Texarkana
1998, no pet.); Ortiz v. State, 930 S.W.2d 849, 853 (Tex. App.- Tyler 1996, no pet.). The evidence
may be direct or circumstantial. Brown, 911 S.W.2d at 747; Roberts, 963 S.W.2d at 898. 
Regardless, the evidence must establish that "the accused's connection with the drug was more than
just fortuitous." Brown, 911 S.W.2d at 747; Roberts, 963 S.W.2d at 898. 

 The State may prove that a person "knowingly" possessed a controlled substance by
introducing evidence that positively links the accused to the contraband. Brown, 911 S.W.2d at 747. 
The nexus need not eliminate every other "outstanding reasonable hypothesis" except the accused's
guilt. Id. at 748. If the accused is not in sole control of the location where the drugs are discovered,
additional links must be revealed between the accused and the controlled substances. Villegas v.
State, 871 S.W.2d 894, 896 (Tex. App.- Houston [1st Dist.] 1994, pet. ref'd) (citing Cude v. State,
716 S.W.2d 46, 47 (Tex. Crim. App. 1986)). An "affirmative link" is not a legal rule, but simply
a shorthand method of proving that the accused possessed the contraband knowingly or intentionally. 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.- Houston [1st Dist.] 2002, no pet.). The quantity
of factors is less decisive than the reasonable impact of the factors in substantiating the elements of
the offense. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.- Houston [1st Dist.] 1994, pet. ref'd);
see also Wallace v. State, 932 S.W.2d 519, 524 (Tex. App.- Tyler 1995, pet. ref'd).

 Factors which may be considered in developing an affirmative link between the accused and
the contraband are as follows: (1) the accused was present at the time of the search; (2) the
contraband was in plain view; (3) the accused was in close proximity to the contraband; (4) the
accused had accessibility to the narcotic; (5) the accused was under the influence of narcotics when
arrested; (6) the accused possessed other contraband or narcotics when arrested; (7) there was an
odor of contraband; (8) there was contraband or drug paraphernalia present; (9) the accused owned
or had the right to possess the place where drugs were found; (10) the location of the contraband was
enclosed; (11) the accused was driving the vehicle where contraband was discovered; (12) drugs
were found on the same side of the vehicle as accused; (13) the amount of contraband was large
enough to indicate the accused knew of its existence; and (14) there was a relationship between the
location of the contraband and the accused's personal belongings. Roberson, 80 S.W.3d at 735 n.2;
Roberts, 963 S.W.2d at 898; Villegas, 871 S.W.2d at 896-97.

Analysis

 Appellant contends that the evidence is legally insufficient because the State did not prove
Appellant loaded the contraband into the Suburban. Although such evidence would show a
connection between Appellant and the contraband, the absence of any evidence that Appellant loaded
the Suburban is not determinative. A review of the evidence in the light most favorable to the
verdict reveals that Appellant was the driver of the Suburban where the contraband and paraphernalia
were discovered. An "open" title to the vehicle with "Suburban" written across it was found in the
Suburban driven by Appellant. From the "open" title, the jury could have reasonably inferred that
Appellant owned the Suburban. 

 A black bag containing methamphetamine was discovered on the front floor board of the
driver's side of the vehicle. Contraband and paraphernalia were found in an enclosed area, the
Suburban. There was a very strong chemical odor emanating from the vehicle. The Suburban was
packed full with numerous substances, liquids, powders and solids, and an extensive amount of
equipment to manufacture methamphetamine. Some of the equipment was visible through the front
and rear windshields of the vehicle. Substances discovered in the Suburban totaled 2,666.98 grams
containing methamphetamine, including the salts, optical isomers, and salts of optical isomers of
methamphetamine, together with any adulterants and dilutants. A black organizer with Appellant's
birth certificate inside, along with paperwork addressed to Appellant, was found in the Suburban. 
Inside the organizer was a recipe that Box believed to be an attempt to work out proportions for the
ingredients to manufacture methamphetamine. 

 We conclude that the quality of these factors is sufficient to link Appellant to the contraband
in question. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the elements of possession of a controlled
substance beyond a reasonable doubt. Accordingly, Appellant's challenge to the legal sufficiency
of the evidence is overruled. 

 Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. Appellant argues that the absence of evidence that he loaded the Suburban
renders the evidence factually insufficient to support the jury's verdict. However, we must conduct
a neutral review of all the evidence in our evaluation of factual sufficiency. Johnson, 23 S.W.3d
at 11. In conducting our review, we note that Miller and Box testified that they did not observe
Appellant load the Suburban with the contraband or equipment. Miller testified that he did not know
if Appellant looked in any of the bags inside the Suburban. Further, Miller testified that he
participated in the stake-out of Jordan's residence but was not watching the house at the time of
Appellant's arrest. 

 Box testified that, in the recorded telephone calls, Jordan asked Appellant to pick-up "stuff"
from Jordan's house, but did not ask Appellant to bring anything with him. Also, Box testified that
Jordan never, to her knowledge, called and asked Appellant to bring a methamphetamine lab from
Dallas. Further, Box testified that Jordan's telephone was not wiretapped, and she could not have
heard conversations between Appellant and Jordan if Appellant had initiated the telephone call. Box
also testified that there were no results of fingerprint testing on items located inside the Suburban. 
She testified that there was no methamphetamine in Jordan's house on February 2, 2001, but
admitted that the house had not been searched since approximately January 29 or 30.

 This evidence, viewed in isolation, tends to support Appellant's contention that he was not
the owner of the materials located in the Suburban and that he did not knowingly possess these
items. However, in reviewing the entire record, both for and against the jury's verdict, we do not
find that proof of Appellant's guilt is so manifestly weak as to undermine faith in the jury's verdict,
or that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting proof. 
Therefore, Appellant's challenge to the factual sufficiency of the evidence is overruled.


Conclusion

 Based upon our review of the record, we hold that the evidence is both legally and factually
sufficient to support the jury's verdict that Appellant was guilty of possession of a controlled
substance, methamphetamine, 400 grams or more, with intent to manufacture. Therefore, the trial
court's judgment is affirmed.

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered February 28, 2003.

Panel consisted of Worthen, C. J, and Griffith, J.































(DO NOT PUBLISH)






1. Box testified that the actual inventory took four to five days to complete. 
2. Tex. Health & Safety Code Ann. § 481.112(f) (Vernon Supp. 2001).
3. Box explained that an "open" title to a vehicle is a title that has been signed over but not yet registered.
4. Possession of a controlled substance, methamphetamine, four hundred grams or more, with intent to
manufacture, is punishable by imprisonment for life or for a term of not more than 99 years or less than 15 years, and
a fine not to exceed $250,000.00. Tex. Health & Safety Code Ann. § 481.112(f) (Vernon Supp. 2001). 
Appellant pleaded true to the enhancement paragraphs in the indictment. Because of the enhancement paragraphs,
Appellant was subject to a fine not to exceed $10,000.00. Tex. Pen. Code Ann. § 12.42(c)(1) (Vernon Supp. 2003).