# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00443-CR

**Brian Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 2030759, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brian Thompson appeals his conviction for possession of four grams or more but less than 200 grams of cocaine. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (West Supp. 2006), § 481.115(d) (West 2003). After the jury found appellant guilty, the trial court assessed punishment at three years' confinement. In three points of error, appellant contends the evidence is legally and factually insufficient to support his conviction. Because we find the evidence to be sufficient, we affirm the judgment of conviction.

## BACKGROUND

The facts at trial showed that on February 23, 2003, at approximately 11:00 p.m., Austin Police Officer Ewa Wegner was on patrol duty when she stopped a car in which appellant was a passenger because the car ran a red light. Wegner had observed the vehicle for several minutes prior to the traffic stop because it would stop abruptly at red lights and then take off at a "very high

rate of speed" when the light turned green. As she followed the car, it pulled into a convenience store parking lot and started to turn around. She noticed that it did not have a front license plate. As she pulled in behind the vehicle to view its rear license plate, the car ran a red light, and she pulled it over. She observed a female driving the car and two male passengers, one in the front passenger seat and the other in the back seat.

As appellant, the passenger in the front seat, started to get out of the car, Wegner instructed him to stay in the vehicle. Wegner observed that the female driver and appellant were engaged in a heated argument. After notifying her dispatcher of the stop, Wegner asked the female driver for her driver's license. She did not produce it immediately, and Wegner observed that she was very angry. She told Wegner that she was having a fight with appellant, her boyfriend, and that she just wanted to go home.

As back-up officers Julian Guzman and Lee Rogers arrived on the scene and assisted Wegner in separating the parties, Wegner conducted a weapons frisk of appellant and continued to speak with the female driver. Wegner eventually issued a citation to the driver for running the red light. Meanwhile, Guzman allowed appellant to sit in the back seat of his patrol car because appellant complained of a medical condition and the weather was cold. After the issuance of the citation, Wegner arranged for a taxicab because she could smell alcohol on the driver and they acknowledged they had come from a bar. Appellant got out of the back seat of the patrol car to leave with the others.

Moments later—a few minutes according to Rogers and a few seconds according to Guzman—in accordance with department policy, Guzman conducted a search of the back of his car

2

and "found a clear plastic baggie filled with white powder" under the back seat where appellant had been seated.  Guzman testified that it is standard procedure to check the back seat at the beginning of each shift and each time an individual is arrested or transported in the patrol car.  He described how he had begun his shift that evening at 8:30 p.m., had searched the back seat of the vehicle by detaching the back seat and searching underneath, and had determined that nothing had been left in the car.  He testified that he had not arrested or transported anyone before allowing appellant to sit in the vehicle.  Guzman testified that the seat detaches from its base and that a routine inspection is completed at the beginning of each shift and following each use.  Guzman's offense report from the night in question also notes that he had performed the required search before "going into service."  Wegner weighed and performed a field test on the white substance contained in the bag found in Guzman's car, and placed appellant under arrest.  A chemist later determined and testified at trial that the substance consisted of 13.23 grams of powdered cocaine.  No fingerprint test was conducted on the bag of cocaine.

At trial, appellant called one witness, the driver of the vehicle, who testified on appellant's behalf.  She testified that the other passenger was her brother, that she and her brother had been drinking alcoholic beverages, and that she was intoxicated on the evening in question but that the officer did not investigate any alcohol offenses.  She expressed surprise that she was not investigated or arrested for driving while intoxicated.  She also testified that, although she was intoxicated, she thought appellant got in and out of Guzman's vehicle more than one time that night.

A jury found appellant guilty of intentionally and knowingly possessing cocaine.

3

## DISCUSSION

A person commits an offense if the person knowingly or intentionally possesses cocaine. Tex. Health & Safety Code Ann. §§ 481.102, .115. To establish the unlawful possession of a controlled substance, the State must prove that the accused exercised actual care, control, or custody over the substance, and was conscious of his connection with it and knew what it was. *Id.* § 481.002(38) (West Supp. 2006); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). These elements may be established by either direct or circumstantial evidence. *Brown*, 911 S.W.2d at 747.

When the defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Id.* at 747-48. Evidence that affirmatively links the accused to the contraband suffices for proof that he possessed it knowingly. *Id.* at 747. This evidence can be either direct or circumstantial. *Id.* In either case, the evidence must establish that the accused's connection with the drugs was more than just fortuitous. *Id.* However, the evidence need not be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *Id.* at 748.

Affirmative links are established by a totality of circumstances. They may include: (1) the defendant's presence when the contraband was discovered; (2) whether the contraband was in plain view; (3) the defendant's proximity to the narcotic, particularly if the defendant had been sitting where the drugs were located; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee;

4

(8) whether the defendant made furtive gestures; (9) whether there was an odor from the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the place where the drugs were found was enclosed; and (12) whether the defendant owned or had the right to possess the place where the drugs were found. *See, e.g.*, *Evans v. State*, No. PD-1911-05, 2006 Tex. Crim. App. 1815, at *7 n.12 (Tex. Crim. App. Sept. 20, 2006); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). There is no set formula of facts necessary to support an inference of knowing possession. The number of affirmative links present is not as important as the logical force they have in establishing the offense. *Evans*, 2006 Tex. Crim. App. 1815, at *7.

In his first point of error, appellant contends that the evidence is legally insufficient as to the element of possession. In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

Here, the testimony of Officers Wegner, Guzman, and Rogers affirmatively linked appellant to the cocaine, satisfying the possession element. Guzman explained that before going on duty, officers are required to perform a routine search of their patrol cars. In particular, they search the detachable back seats of their cars to make sure there is no contraband or misplaced items. Guzman testified that he conducted the search at the commencement of his shift and found nothing under the seat. He also testified that appellant was the first person who was placed in the patrol car

5

that evening and that no one had been transported or arrested prior to appellant sitting in the back seat. The officer testified that no one else had been in the back of the vehicle other than appellant and that he searched the back seat "a few seconds" after appellant exited the vehicle. Guzman testified that he found the bag stuffed "under the base of the metal plate where the base is, in between the seat."

Because the door to the back seat of the vehicle was open and there were moments when Guzman had his back to appellant and other officers had access to the vehicle, appellant urges that the evidence is legally insufficient. He argues that there is no testimony about the third passenger and that he or someone else could have placed the contraband in the patrol car. In addition, he contends that the evidence is insufficient because the investigators failed to test and adduce evidence concerning fingerprints on the baggie.

Because the officer found no contraband in the back of the patrol car during the routine check at the commencement of his shift, appellant was the only occupant of the back seat thereafter, and the cocaine was found in the area where he had been sitting, the totality of the circumstances affirmatively links appellant to the cocaine. *See Williams v. State*, 784 S.W.2d 428, 429-30 (Tex. Crim. App. 1990) (finding sufficient evidence defendant possessed cocaine found in back of patrol car after his arrest considering officers checked the back of the car before their shift, defendant was the first occupant of the back seat during the shift, and he was fidgeting while being transported to police station). As in *Williams*, the back seat of the patrol car had been subjected to a routine search before leaving the station; the seat was lifted and the area was thoroughly inspected. Guzman testified that he was certain he had searched his car before leaving the station that night.

6

Appellant was the first person to sit in the back seat of Guzman's car during his shift that night. As in *Williams*, the cocaine was found under the spot where appellant had been sitting. The contraband was found immediately after appellant exited the vehicle. But unlike *Williams*, appellant was not handcuffed or closely watched while he was alone in the police car, so he had a greater opportunity to conceal or discard the contraband. *See, e.g.*, *Logan v. State*, No. C14-91-0195-CR, 1993 Tex. App. LEXIS 1667, at *5-6 (Tex. App.—Houston [14th Dist.] June 10, 1993, no pet.) (not designated for publication) (finding sufficient evidence defendant possessed cocaine found in back of patrol car although he made no incriminating gestures; because he was not handcuffed, he could have rid himself of the cocaine without noticeable movement).

There was no evidence that the third passenger—or anyone else—approached the vehicle while appellant was in it. The jury could have found beyond a reasonable doubt that appellant knowingly possessed the cocaine. Accordingly, the evidence is legally sufficient to support the verdict. We overrule appellant's first point of error.

In his second and third points of error, appellant challenges the factual sufficiency of the evidence supporting the verdict and the inadequacy of the circumstantial evidence. In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *30 (Tex. Crim. App. Oct. 18, 2006) (citing *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997)). While we may disagree with the jury's conclusions, we must also exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). We may find the

7

evidence to be factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the evidence. *Watson*, 2006 Tex. Crim. App. LEXIS 2040, at *31 (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

The standards of review for legal and factual sufficiency are applicable to both direct and circumstantial evidence cases. *See Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991). Whether the evidence of possession is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown*, 911 S.W.2d at 747. Circumstantial evidence often has equal or even greater probative value than direct evidence. *Id.* at 746.

Appellant urges that the evidence is just as consistent with the officer simply missing the baggie of cocaine when he conducted the routine sweep of the car and that mere proximity of appellant to the drugs is insufficient to support the verdict. He also suggests that testimony is lacking about the location and acts of the third passenger. He asserts that these alternative hypotheses as to the source of the drugs render the evidence factually insufficient. But appellant offered no contrary evidence to support his theory and argues only competing inferences from the evidence.

Guzman testified that appellant was the first person to sit in the back seat after he conducted the routine search at the beginning of the shift and the drugs were found in a location consistent with Guzman's description of appellant's location and movement. Guzman found the drugs immediately after appellant exited the vehicle. Viewing this evidence in a neutral light, we find no evidence presented at trial that undermines the verdict. The finding of guilt is not clearly

8

wrong or manifestly unjust, nor is it against the great weight and preponderance of the evidence. *See Watson*, 2006 Tex. Crim. App. LEXIS 2040, at *31. We overrule appellant's second and third points of error.

## CONCLUSION

Because we find the evidence legally and factually sufficient, we overrule appellant's points of error and affirm the conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   October 27, 2006

Do Not Publish