NO. 07-07-0149-CR
NO. 07-07-0150-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 23, 2007
_____

CHARLES RAY HALL,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NOS. 54,218-D & 54,219-D; HON. DON EMERSON, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Charles Ray Hall appeals his convictions for unlawfully possessing a firearm by a felon and possessing a prohibited weapon. Via eight issues, he contends that the evidence is legally and factually insufficient to support both convictions. We disagree and affirm.

*Background*

Lieutenant Martin Birkenfeld of the Amarillo Police Department testified that on August 19, 2006, around 3:10 in the morning, he heard a "couple of popping sounds" which

he was unable to identify. Thereafter, he slowly drove towards the area from which the sounds came. As he did so, he heard one more "pop" and eventually observed four individuals walking down the street from where he thought the sounds emanated. The four individuals saw Birkenfeld and began walking "the other way"; this caused the officer to watch them. Eventually, he saw one with a "weapon of some type," noted that "it looked like a long gun. . . ," called for back-up, and kept following them with his lights trained on the group. Upon realizing that the weapon being carried was "definitely . . . a sawed-off shotgun," the officer activated his emergency lights and siren. At that point, the individuals began running. Birkenfeld noted that the person carrying the shotgun was "wearing a dark shirt, probably dark blue, and it had large white letters on the back." The lettering made it easy to describe the shirt, according to the officer.

The group split up with the person carrying the shotgun running in a direction different than the others. Birkenfeld followed him until the suspect was lost in an apartment complex. Appellant was soon discovered by other officers hiding behind a bush in an alley by the apartment complex. Upon seeing the detainee, Birkenfeld identified him as the person with the gun. This identification was reiterated at trial. A sawed-off shotgun was also found lying in weeds within five to ten feet of where appellant was arrested and within the alley wherein appellant ran.

At trial, appellant attempted to discredit Birkenfeld's testimony by focusing on the fact that the officer did not know what the other three individuals were wearing and, therefore, may have confused appellant with one of the others. So too was it of import to appellant that his fingerprints were not found on the weapon. Appellant also tried to show that someone other than he could have been the person who actually had the gun.

2

Despite this, Birkenfeld reiterated that he was not mistaken in identifying appellant as the "one who was carrying the rifle [sic]."

Testifying on his own behalf, appellant said that he had been at home in the early hours of August 19th but some friends had come by and asked him to attend a party. In fact, two parties were occurring at different ends of his apartment complex. He attended the one that was closest to his apartment and drank beer for about two hours. At the time, he purportedly observed an individual in possession of what he believed to be a firearm, even though he was not sure what the object was. Once the police showed up everyone scattered. According to appellant, he ran because he had been in trouble with the police before and had been drinking. He also denied possessing the firearm.

The defense also called Vernon Raynard Anderson, who testified that he was with appellant the night of the incident and did not observe appellant carrying a gun. Yet, he acknowledged that he left the party around midnight and was not present when the police arrived.

### Issues One - Eight - Legal and Factual Sufficiency

Through his eight issues, appellant contends that the evidence was both legally and factually insufficient to 1) prove he exercised care, custody or control over the weapon or 2) affirmatively link him to the weapon. We overrule the issues.

*Standard of Review*

The applicable standards of review can be found in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App.1996), *Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006), and *Watson v. State*, 204 S.W.3d 404 (Tex. Crim. App. 2006). We refer the parties to them.

3

Next, in establishing possession, we use the same methodology used to establish guilt for possessing controlled substances. *Nguyen v. State*, 54 S.W.3d 49, 52-53 (Tex. App.–Texarkana 2001, pet. ref'd). Thus, the State must show that the accused 1) exercised actual care, control, or custody over the firearm, 2) was conscious of his connection with it, and (3) possessed the firearm knowingly or intentionally. *Id*. *citing*, *Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995).

The record before us contains eyewitness testimony identifying appellant as the one who possessed and ran with the shotgun. Whether to believe it was up to the factfinder. But, if believed, it provided some evidence upon which a rational jury could conclude, beyond reasonable doubt, that appellant intentionally or knowingly possessed the weapon.

To the extent appellant and others gave testimony that contradicted Birkenfeld's, we again note that it was the jury's prerogative to choose who to believe. Moreover, other evidence such as appellant's effort to flee and hide as well as the proximity between the shotgun's location and appellant's place of arrest lend further credence to the officer's identification of appellant as the possessor.

In sum, viewing all the evidence in the light most favorable to the verdict leads us to conclude that both verdicts enjoyed the support of legally sufficient evidence. And though the evidence was contradictory, the verdicts were not against the great weight and preponderance of the evidence nor clearly wrong or manifestly unjust. So, they too were supported by factually sufficient evidence.

Accordingly, we affirm the judgments of the trial court.

Per Curiam

Do not publish.