COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| GABRIELA AVALOS | § | No. 08-07-00224-CR |
| Appellant, | § | Appeal from the |
| v. | § | 384th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20060D02719) |
| | § | |
| | § | |

**O P I N I O N**

Gabriela Avalos was found guilty by a jury of possession of marijuana, greater than fifty pounds but less than or equal to two thousand pounds. The court sentenced her to 3 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. She raises three issues on appeal, challenging the legal and factual sufficiency of the evidence and arguing that she was deprived of her right to effective assistance of counsel.

On April 27, 2006, El Paso Police Officer Jeff Wall was ordered to arrest Appellant pursuant to a warrant. Appellant's last known address was in the Sandoval Housing Complex in El Paso. When Officer Wall arrived, however, the property manager informed him that Appellant had moved out of the complex but left a forwarding address. Appellant was living in a single family residence at 7573 Plaza Taurina.

Officer Wall went to the address on Plaza Taurina. When he arrived at the home, a car was parked in the driveway. He approached the entrance and noticed the door knob was broken, as if someone had forced the door open. No one answered when he rang the door bell.

Concerned that he may have happened on the scene of a break-in, he called for assistance. He then called inside the house and announced himself as a police officer. Again, no one responded.

When a second officer arrived on the scene, Officer Wall and his back-up entered and checked the house together. When he entered the house, Officer Wall noticed a faint smell of marijuana. The smell lead him to believe that someone may be in the house. On the second floor, the officers encountered a locked bedroom ("the middle bedroom"). Unlike the other bedroom doors, the door to the middle bedroom was fitted with a heavy duty, exterior-type door knob. The officers were concerned that the person responsible for the broken front door knob could be hiding, or that a resident was being held against their will in the room. The officers announced their presence through the locked door, and when no one responded, they used a key which they found in the main floor living room to unlock the door. The room was empty except for a bed and several large bundles stacked against one wall. Based on the way the bundles were wrapped and the odor, the officers suspected they contained marijuana.

Detective Gerald Humphrey of the El Paso Police Department's Narcotics Unit was called to investigate the house. As he approached the front door he smelled an "overwhelming odor of what [he] believed to be marijuana." Based on the smell and the information provided by the other officers, the detective secured a search warrant for the premises. In the middle bedroom, Detective Humphrey found bundles of marijuana, packaging supplies, and "masking agents" which were used in an attempt to camouflage the scent of the drugs. In the master bedroom, the detective found several one hundred dollar bills, Appellant's driver's license, and a marriage certificate with Appellant's name on it. In the garage, the police located several more bundles of marijuana and cardboard boxes stacked underneath a set of tires. Detective Humphrey testified that it was common practice for drug smugglers to hide drugs inside tires

when crossing the international border into El Paso.

Detective Esteban Anchondo also assisted in the investigation. He too testified that he smelled marijuana as he approached the front door of the house. When he entered the middle bedroom, he noted that the drug bundles had begun to swell and that the bundles left an imprint on the bedroom carpet when they were removed. The bundles were packaged in several different ways, indicating they were brought to the house from several different sources. Based on these facts, in addition to the strength of the odor and the amount of drugs seized, Detective Anchondo concluded that the drugs had been in the house for several days. Based on the size and number of packages, the detective also suspected that these bundles were being stockpiled for shipment north for distribution. Detective Anchondo explained that the amount of marijuana discovered in the house, over five hundred pounds, would only have been entrusted to a person or people who had already proven themselves trustworthy to a larger criminal enterprise.

After the State rested its case, Appellant's daughter, Ms. Payan, testified on her mother's behalf. According to Ms. Payan's testimony, Appellant lived in the Plaza Taurina house with her husband, two children, and another adult. Ms. Payan believed the third adult was her step-father's cousin. Ms. Payan stated that her step-father's cousin rented the middle bedroom from her mother, and that no one else had access to the room.

In Issues One and Two, Appellant challenges the legal and factual sufficiency of the evidence supporting her conviction. In a legal sufficiency review, we must consider all of the evidence in a light most favorable to the verdict and determine whether a reasonable minded juror could have found the essential elements were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "'the responsibility

of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13.

In a factual sufficiency review, we consider all the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust. *Id*. We cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Nor can we declare that a conflict in the evidence justifies a new trial because we disagree with the jury's resolution of the conflict. *Id*. A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In addition, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006) (factual sufficiency review still requires "due deference" be given to the jury's determinations).

A person commits the offense of possession of marijuana if she knowingly or intentionally possesses a usable quantity of marijuana. TEX.HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2003). Possession is defined as "actual care, custody, control, or management." TEX.HEALTH & SAFETY CODE ANN. § 481.002(38)(Vernon Supp. 2008). To support a conviction for possession of a controlled substance, the State must prove the accused: (1) exercised actual care, custody, control, and management over the contraband; and (2) the

accused knew the substance she possessed was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). The accused's knowledge may be inferred from the circumstances. *Linton v. State*, 15 S.W.3d 615, 618 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd).

In order to prove that the accused had knowledge of and control over the contraband in cases where the accused is not in sole possession of the location where the substance is found, there must be additional independent facts and circumstances which link the accused to the contraband. *See Evans v. State*, 202 S.W.3d 158, 161-62 (Tex.Crim.App. 2006). Whether direct or circumstantial, the evidence must establish the accused's connection with the contraband was more than just fortuitous. *Id*. at 161. While the accused's mere presence at the location where the drugs are found is insufficient to establish possession, presence, when combined with other "affirmative links" between the accused and the drugs, may well be sufficient to establish the element beyond a reasonable doubt. *Id*. at 162.

The key to this type of possession inquiry is the "logical force" with which the evidence supports an inference of conscious possession of contraband by the accused. *See id*. at 162; *Porter v. State*, 873 S.W.2d 729, 732 (Tex.App.--Dallas 1994, pet. ref'd). Texas courts have utilized a wide variety of factors to analyze the sufficiency of the evidence in support of the jury's affirmative finding of possession, including: (1) the defendant's presence at the location where a search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was a residual odor of contraband; (10) whether the

defendant owned or had the right to posses the place where the drugs were found; (11) whether the drugs were found in an enclosed area; (12) whether the accused was the operator of an automobile where contraband was found; (13) whether the defendant was found with a large amount of cash or weapons at the time of her arrest; (14) whether the conduct of the accused indicated a consciousness of guilt; and (15) whether there was a significant amount of contraband seized. *See Evans*, 202 S.W.3d at 162 n.12; *Miramontes v. State*, 225 S.W.3d 132, 141-42 (Tex.App.--El Paso 2005, no pet.).

Appellant contends that the State failed to present evidence that she exercised the care, custody, or control over the marijuana found in the house. She argues that the fact that the marijuana was found in her residence, without more, was insufficient to establish she was in possession of the contraband. Having reviewed the evidence presented at trial, we disagree with Appellant's assertion that the presence of the drugs in her house was the only "link" between herself and the contraband. The "affirmative links" between Appellant and the marijuana include: (1) Ms. Payan's testimony that the house was Appellant's residence; (2) the police officers' testimony about the marijuana odor within the house; (3) the location of the drugs in the unlocked garage; (4) the cash found in Appellant's bedroom; (5) the evidence that the drugs were being stored in the house, and prepared for distribution there; (6) the quantity of drugs found; and (7) the detective's conclusion that the drugs had been in the house for several days. In these circumstances, a reasonable jury could have determined Appellant's connection to the drugs was more than just fortuitous. *See Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005). In conclusion, having reviewed the record in both a light most favorable to the verdict and in a neutral light, we conclude the evidence was legally and factually sufficient to support the jury's verdict. Accordingly, Issues One and Two are overruled.

In Issue Three, Appellant contends she was denied her right to effective assistance of counsel. We review claims of ineffective assistance of counsel under a two-pronged test. First, an appellant must establish counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 693-94, 104 S.Ct. 2052, 2067-68, 80 L.Ed.2d 674 (1984); *Mallet v. State*, 65 S.W.3d 59, 62-3 (Tex.Crim.App. 2001). Second, the appellant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Mallet*, 65 S.W.3d at 62-3. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallet*, 65 S.W.3d at 63. Claims of ineffective assistance must be proved by a preponderance of the evidence. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002).

When we review a claim of ineffective assistance, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and the appellant must overcome the presumption that the challenged conduct can be considered sound trial strategy. *Jackson*, 877 S.W.3d at 771. Allegations of ineffectiveness must be firmly founded in the record. *Mallet*, 65 S.W.3d at 65. The record on direct appeal will generally be insufficient to show that counsel's representation was so deficient as to meet the first prong of the *Strickland* analysis because the reasonableness of counsel's choices often involve facts that do not appear in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003). An appellant challenging trial counsel's performance, therefore, faces a difficult burden and a substantial risk of failure. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

Appellant argues that trial counsel was deficient because he failed to file a motion to suppress and failed to object on the basis that the police entered her house and seized the drugs illegally. However, the record does not demonstrate that counsel had an unprofessional reason for failing to object, nor does it contain an instance where counsel had an opportunity to explain his decision. To overcome the first prong of *Strickland*, the appellant must produce a record affirmatively demonstrating the objectively unprofessional conduct. *See Bone*, 77 S.W.3d at 836. Without such a record, we are bound by the presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and that the challenged action can be considered reasonable trial strategy. *Jackson*, 877 S.W.3d at 771. In addition, without proof of unprofessional conduct, we cannot determine that Appellant's defense was prejudiced by the representation. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Herron v. State*, 86 S.W.3d 621, 634 (Tex.Crim.App. 2002). Because the appellate record does not affirmatively demonstrate the alleged ineffectiveness, we overrule Issue Three.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

August 12, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)