# NO. 12-08-00460-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LUIS ALBERT VILLALOBOS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Appellant Luis Villalobos appeals his conviction for possession of marihuana in the amount of 2,000 pounds or less but more than 50 pounds. In two issues, Appellant contends that the evidence is insufficient to support the jury's verdict and that the State made an impermissible jury argument. We affirm.

## BACKGROUND

In April 2008, Texas Department of Public Safety (DPS) officers in McAllen, Texas, were contacted by a confidential informant regarding what he believed to be a shipment of drugs the informant had been retained to drive from McAllen, Texas, to Tyler, Texas. The informant was a truck driver for a legitimate third party trucking and shipping company. He reported the shipment because he thought it suspicious that he was to be paid half his fee upon pickup, and the other half upon delivery. In McAllen, DPS officers x-rayed the truck, opened one of the boxes on the truck, and found a water cooler designed to dispense bottled water.

The cooler had been disassembled and its internal components removed. Packaged marihuana was placed inside, and the cooler was then reassembled. The

1

reassembled cooler was put in a shipping box, which was placed onto a pallet with other similar boxes. Finally, each pallet was tightly wrapped with cellophane shrink wrap, and the pallets were loaded onto the informant's truck.

The officers decided to allow delivery of the marihuana through a "sting" operation in Tyler, which they believed would result in the apprehension of the members of the drug distribution ring. The officers outfitted the confidential informant with video and sound and he left with the load. When he arrived in Tyler, the informant met his contact, an individual other than Appellant, who then directed the informant to a third location, which was the place of delivery.

The location was a former truck yard and place to unload shipments, but had not been used or equipped for unloading shipments for over two years. At the time in question, the property was used sporadically as a repair shop for vehicles, machinery, and equipment.

Appellant paid the utility bills and performed mechanic services at the property as a second job in exchange for the right to live on the property. The exact percentage of time that Appellant stayed overnight at the property is disputed. It is undisputed, however, that Appellant lived on the property at least sporadically and that Johnny Riley also lived there. Riley is the owner's uncle. He lived on the property to watch over it while his nephew, the owner, was incarcerated.

When the informant arrived at the property, he noticed nine persons, including Appellant, at the property. Because there was no loading dock, one of these persons had rented a large forklift and transported it to the property as the truck arrived. The pallets were unloaded directly onto the wet, muddy ground. Other individuals began removing the boxes from the pallets and loading them into different passenger trucks and personal automobiles. Appellant assisted in the unloading process. The officers, who had the property under surveillance, entered the property while Appellant and the other individuals unloaded the truck.

Appellant fled the scene and hid with two other suspects. Only these three of the nine individuals were apprehended. In all, over 200 boxes with coolers inside were unloaded. Some of the coolers contained marihuana, and others did not. All of the boxes remained sealed during the unloading process, but only boxes containing marihuana were

2

loaded into the personal automobiles after being unloaded from the truck. In all, approximately 1,200 pounds of marihuana was seized.

At trial, the jury convicted Appellant of possession of marihuana in the amount of 2,000 pounds or less but more than 50 pounds, and assessed his punishment at fifteen years of imprisonment.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the verdict. Specifically, he argues that the evidence is insufficient to show that he had knowledge of the contraband concealed inside the water coolers.

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

In conducting a factual sufficiency review, we look at the evidence in a neutral light. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). A verdict will be set aside if the evidence supporting the conviction, although legally sufficient, is so weak that the jury's determination is clearly wrong and manifestly unjust, or when there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233 S.W.3d at 854.

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the jury's determinations. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417.

## Applicable Law

A person commits a second degree felony if he knowingly or intentionally possesses marihuana in the amount of 2,000 pounds or less but more than 50 pounds. TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (Vernon 2003 & Supp. 2009). "Possession" is defined as having "actual care, custody, control, or management" of the controlled substance. TEX. PENAL CODE ANN. § 1.07(39) (Vernon Supp. 2008).

To support a conviction for possession of a controlled substance, the state must also prove that "(1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). If the contraband is not in the exclusive possession of the accused, the state must show additional independent facts and circumstances that affirmatively link the accused and the contraband. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981). Mere presence where the drugs are found is insufficient alone, but when combined with other evidence, either direct or circumstantial ("links"), may well be sufficient to establish knowing possession, control, management, or care of the contraband beyond a reasonable doubt. *Evans*, 202 S.W.3d at 162.

The following is a nonexclusive list of possible links that have been recognized as sufficient, either singly or in combination, to establish a person's knowing possession of the contraband:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 163 n.12.

## Legal Sufficiency

Viewing the evidence in the light most favorable to the verdict, we first note that Appellant was present at the scene when DPS officers entered the property to arrest the suspects. Additionally, he was in close proximity to the contraband and actively assisted in the unloading process.

Appellant had the right to possess the property where the marihuana was delivered. On the surveillance video, he told the informant that he owned the property. The evidence at trial, however, showed that he did not own the property, but that he resided there sporadically. Johnny Riley, the other resident, also had the right to possess the property. However, Riley was sent out for a "beer run" while the truck was unloaded. Thus, Appellant controlled the property when the delivery took place and allowed the other suspects access so that the contraband could be unloaded.

Simultaneously with Riley's departure, the truck containing the marihuana and the rented forklift used to unload the marihuana arrived at the property. The nine individuals who remained at the property, including Appellant, unloaded the truck in Riley's absence. Riley was gone for over an hour. He returned before the truck was completely unloaded, but the DPS officers did not arrest him because there was no evidence linking him to the shipment.

Appellant and Riley testified that trucks had not been unloaded on the property for over two years. Furthermore, the property was no longer suitable for unloading trucks. As a result, the pallets were strewn across muddy, wet ground. DPS officers testified that this indicated the load was not objectively legitimate because a legitimate

5

shipping operation would not allow boxed merchandise to be lying on a wet, muddy surface. Officers also testified that the load here was not likely a legitimate shipment of goods because the boxes were reloaded into personal passenger vehicles at the initial point of delivery.

Appellant fled when the police entered the premises to arrest the suspects. Appellant also provided two false names to the police upon his apprehension. This conduct indicates a consciousness of guilt.

The amount of contraband, over 1,200 pounds, is significant. The DPS officers all testified that this was the largest marihuana seizure they could recall in Tyler. Those officers also testified that it is uncommon to entrust that amount of marihuana, which had a wholesale value of over $500,000.00, to individuals not associated with the drug distribution network.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, including that Appellant had knowledge that the boxes contained marihuana. Therefore, the evidence is legally sufficient to support the verdict.

**Factual Sufficiency**

Appellant argues that the packaging of the marihuana rendered it impossible to show that Appellant had knowledge of the contents. Specifically, he claims that evidence showing the marihuana was secreted in coolers, which were further concealed in boxes, does not demonstrate that he knew the boxes contained marihuana. Moreover, none of the officers could recall whether the packages emitted an odor. Appellant also argues that since the drug distribution ring hired a legitimate truck driver, it is plausible that they found a legitimate place of business at which to unload their shipment—i.e., the property controlled by Appellant.

However, it is not the number of links that is dispositive, but rather the logical force of all the evidence, both direct and circumstantial. *See Evans*, 202 S.W.3d at 162. Furthermore, where there is conflicting evidence, the jury's resolution of the conflicts is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, writ ref'd). Having reviewed the record in its entirety, with consideration given to all the evidence, both for and against the trial court's finding, we cannot say that

the proof of guilt is so obviously weak or otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment.

Appellant's first issue is overruled.

### JURY ARGUMENT

In his second issue, Appellant asserts that the State made an impermissible argument during its rebuttal to defense counsel's jury argument.

Jury argument is permissible if it constitutes a summation of the evidence, a reasonable deduction from the evidence, an answer to argument of opposing counsel, or a plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App.1992). An argument that exceeds these bounds is error, but not necessarily reversible error. *Id.*

Appellant's counsel stated the following during his jury argument:

> Let me tell you what a verdict of not guilty says. What a verdict of not guilty says is this: "Buddy, we're coming after you, and we're not going to let you use people like [Appellant] to fulfill your purposes when you direct that truck where to go, when you make friends with people who are not a part or participating in your operation.

Appellant complains here of the following portion of the State's rebuttal:

> And if you really think that finding him not guilty meant that "[co-defendant], boy we're going after you now, I'll tell you that right now" – if you find him not guilty meant nobody knew anything, because when [his co-defendant's] trial gets here, they're going to say the same thing. It wasn't even his land.
>
> . . . .
>
> Everything in totality of it, everybody working together to achieve a common goal, they're all guilty or none of them are guilty.

Appellant argues that the State's rebuttal argument is a misstatement of the law. Consequently, he contends, the State's rebuttal allowed the jury to convict Appellant based solely on his presence at the scene where the marihuana was unloaded. He further asserts that since there is a lack of evidence connecting Appellant with the marihuana, the harm from the State's rebuttal is especially apparent.

Appellant argued that a not guilty verdict would send a message to drug dealers that their efforts to distance themselves from their misdeeds will be ineffectual, that they

7

alone will be convicted for the offense, and innocent third parties who unknowingly participated in drug trafficking will not be convicted. In his closing argument, Appellant's counsel maintained that Appellant was an unwitting participant in the operation.

The State, in its rebuttal, urged that, under the facts of this case, all of Appellant's codefendants had knowledge of the marihuana's existence. The State pointed out that in their subsequent trials, Appellant's codefendants will all attempt to distance themselves from the transaction. If Appellant were found not guilty, the State warned, the others would not be convicted either because each could argue that "[i]t wasn't even his land."

We conclude that the State's rebuttal was an answer to the argument of Appellant's counsel and falls within the bounds of permissible jury argument. Appellant's second issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered November 12, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

8