MARY'S OPINION HEADING 








NO. 12-09-00443-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

JESSE L.
MILLIRON,                                 §                      APPEAL FROM
THE 173RD

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                                        
       

MEMORANDUM
OPINION 

Jesse
L. Milliron appeals his conviction for possession of certain chemicals with the
intent to manufacture a controlled substance.  In two issues, Appellant argues
that the evidence is legally and factually insufficient to support his
conviction.  We affirm.

 

Background

Police
officers in Henderson County served a search warrant at a home in the Cherokee
Shores Subdivision after receiving information that there were controlled
substances at that location.  Three people were at the home when the police
served the warrant.  Inside the home, the police found items that caused them
to conclude that someone had been manufacturing methamphetamines at that
location.  Specifically, they found a used syringe, a propane style tank and an
oxygen style tank, both of which contained anhydrous ammonia, a glass pipe, a
coffee filter with drug residue in it, acetone, Coleman fuel, a gas mask,
methamphetamines, and several boxes of the over the counter medication Sudafed.[1] 
The Sudafed boxes and the two tanks were found inside a bedroom that was
padlocked shut.  In that same bedroom, the police also found a bottle of
prescription medication with Appellant’s name on it and a box of his business
cards.

Appellant
was not present when the police served the warrant.  However, Mikel
Kirkpatrick, the homeowner, gave a statement implicating Appellant in the
possession of the anhydrous ammonia, and the police filed charges against him
and obtained a warrant for his arrest.  A Henderson County grand jury indicted
Appellant for the felony offense of possession of certain chemicals with the
intent to manufacture a controlled substance.[2] 
Specifically, the grand jury alleged that he possessed the anhydrous ammonia
and the Sudafed tablets, which it alleged were an immediate precursor to
methamphetamine, with the intent to manufacture a controlled substance.  The
grand jury also alleged that Appellant had twice before been convicted of
felony offenses, that one of those convictions was final before the commission
of the other offense, and that both convictions were final before the commission
of this offense.  

Appellant
pleaded not guilty, and a trial was held.  Testifying at Appellant’s trial,
Kirkpatrick disavowed his previous statement that Appellant had possessed the
anhydrous ammonia.  Instead, he testified that he did not know who the tanks
belonged to and that, while he had seen Appellant conducting some stages of the
process for manufacturing methamphetamine, he had not seen him use any
anhydrous ammonia.  Kirkpatrick also testified that Appellant was rarely at the
house and only visited the home for short periods of time.   

One
of the other persons present when the warrant was executed testified that
Appellant was a methamphetamine “cook,” that he had just brought Appellant
lithium batteries–a raw material for manufacturing methamphetamines–a short
time before the police arrived, and that the gas tanks belonged to Appellant. 
Police officers testified about the methamphetamine manufacturing process and
that one method of production required anhydrous ammonia and pseudoephedrine, which
was present in Sudafed tablets.  The jury found Appellant guilty as charged. 
Appellant pleaded true to the sentencing enhancement allegations, and the trial
court assessed a sentence of imprisonment for forty years.  This appeal
followed.  

 

Sufficiency of the Evidence

In
two issues, Appellant argues that the evidence is legally and factually
insufficient to show that he possessed the Sudafed and the anhydrous ammonia.  

Standard of Review

While
this appeal was pending, the Court of Criminal Appeals held that appellate
courts were to review the sufficiency of the evidence in a criminal case using
only the legal sufficiency standard.  See Brooks v. State, No.
PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *2 (Tex. Crim. App. Oct. 6,
2010) (plurality opinion); 2010 Tex. Crim. App. LEXIS 1240, at *59 (Cochran,
J., concurring).  Accordingly, we will review Appellant’s challenge to the
sufficiency of the evidence under the well established standard for legal
sufficiency.  See Brooks, 2010 Tex. Crim. App. LEXIS 1240, at *2
(plurality opinion) (“It bears emphasizing that a rigorous and proper
application of the Jackson v. Virginia legal-sufficiency standard
is as exacting a standard as any factual-sufficiency standard (especially one
that is ‘barely distinguishable’ or indistinguishable from a Jackson v.
Virginia legal-sufficiency standard).”).

The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence.  See Jackson v. Virginia,
443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v.
State, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref’d).  When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Brooks, 2010 Tex. Crim. App. LEXIS 1240, at *14 (citing Jackson,
443 U.S. at 319, 99 S. Ct. at 2789).  Under this standard, a reviewing court
does not sit as a thirteenth juror and may not substitute its judgment for that
of the fact finder by reevaluating the weight and credibility of the evidence. 
Id., 2010 Tex. Crim. App. LEXIS 1240, at *15; Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Instead, a
reviewing court defers to the fact finder’s resolution of conflicting evidence
unless that resolution is not rational in light of the burden of proof. Brooks,
2010 Tex. Crim. App. LEXIS 1240, at *15-16.  The duty of a reviewing court is
to ensure that the evidence presented actually supports a conclusion that the
defendant committed the crime.  See Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).

Applicable
Law

As
alleged in the indictment, the State was required to prove that Appellant
intentionally or knowingly possessed anhydrous ammonia or an “immediate
precursor” with intent to manufacture a controlled substance unlawfully.  See
Tex. Health & Safety Code Ann.
§ 481.124 (Vernon 2010); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  An “immediate precursor” is defined by statute as a
substance so designated by the Director of the Department of Public Safety.  Tex. Health & Safety Code Ann. §
481.002(22) (Vernon 2010).  The intent to manufacture a controlled substance
unlawfully may be presumed if the actor possesses or transports anhydrous
ammonia in a container or receptacle that is not designed and manufactured to
lawfully hold or transport anhydrous ammonia.  See id. §
481.124(b)(1).  

Possession
means “actual care, custody, control, or management” of an item.  Tex. Health & Safety Code Ann. §
481.002(38) (Vernon 2010).  The evidence used to prove possession can be either
direct or circumstantial.  Brown, 911 S.W.2d at 747.  When proof
of possession is circumstantial, the state must establish that the accused’s
connection to the substance was more than just fortuitous.  Id. 
In the past, courts have held that there must be additional independent facts
and circumstances that affirmatively link the accused to the contraband when he
does not possess it on his person.  See Poindexter v. State, 153
S.W.3d 402, 406 (Tex. Crim. App. 2005).  In Evans v. State, 202
S.W.3d 158, 163 (Tex. Crim. App. 2006), the court of criminal appeals restated
the proper method to analyze the sufficiency of the evidence in cases where
possession of an item is illegal.  The court acknowledged what had been called
an “affirmative links” test, but held that circumstantial evidence of
possession could be sufficient evidence to connect a defendant to the actual
care, custody, control or management of contraband when the “logical force of
the circumstantial evidence, not the number of links” supported the jury’s
verdict.  Id. at 163 n.12, 166.  In that case, the court noted
that the jury had already engaged in a weight of evidence determination–one
which likely included an analysis of links between a defendant and the
drugs–and that under “federal and Texas law, juries trump both trial and
appellate judges on weight-of-evidence determinations.”  Id. at
164.

Analysis

With
respect to the legal sufficiency of the evidence, Appellant does not argue that
the Sudafed tablets were not an “immediate precursor” or that the evidence did
not support the conclusion that whoever possessed the tablets and anhydrous
ammonia did so with the intent to manufacture a controlled substance.  Rather,
he argues that the evidence was insufficient to show that he possessed those items.

Specifically,
Appellant argues that the circumstantial evidence suggests that he did not
possess the items.  For example, Appellant was not present when the items were
discovered.  He had no controlled substances on his person, he did not flee, he
made no statements, there was no odor of contraband about him, and no items of
paraphernalia or contraband were found when he was arrested.  Citing
Kirkpatrick’s testimony, Appellant argues that the evidence showed that he was
rarely at the home and that no evidence showed he controlled the locked room in
which the tablets and anhydrous ammonia were found.  Appellant also directs us
to evidence that he argues is contrary to the verdict, including evidence that
he lived in Irving, Texas, and Kirkpatrick’s testimony that the tanks did not
belong to Appellant.  

As
the State points out, there is circumstantial evidence that supports the jury’s
verdict.  Specifically, the presence of Appellant’s business cards and his
prescription pill bottles in the locked room are consistent with Appellant
controlling that room.  And the State had direct evidence that Appellant
possessed the anhydrous ammonia in the tanks.  Steve McArter, the other man
present when the police served the search warrant, testified that Appellant moved
into the home a month or two before the police served the search warrant.  He
testified that Appellant was the only person with a key to the padlocked room
in the home, that he had seen Appellant conduct part of the process of
manufacturing methamphetamines, and that the two tanks recovered from the
locked room belonged to Appellant.  The tanks, one a repurposed oxygen tank,
the other a propane style tank, were not designed and manufactured to hold
anhydrous ammonia.  

While
Appellant does not address McArter’s testimony in his appellate brief,
Appellant’s attorney asserted at trial that the tanks could have belonged to
McArter and that he, therefore, had a motive to shift the blame to Appellant. 
McArter, in response to counsel’s questioning him about his ability to
manufacture methamphetamine, testified that “[c]an’t no [sic] idiot make
methamphetamine.  You have to be very intelligent.”  As with the rest of his
testimony, this statement contains both direct and indirect assertions that the
jury was well equipped to evaluate.  With only the cold appellate record to
review, it is appropriate that this court defer to the jury’s assessment of the
weight to be given to McArter’s testimony.  

Ultimately,
it was for the jury not only to assess the weight of McArter’s testimony but to
determine how to incorporate all of the testimony and the physical evidence.  See,
e.g., Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999) (“[T]he jury, as the trier of fact, is the sole judge of the
credibility of the witnesses and of the strength of the evidence.”).  The jury
credited McArter’s testimony but did not accept Kirkpatrick’s implied assertion
that Appellant did not possess the tanks.  We must give great deference to jury
determinations concerning the weight of the evidence and the credibility of the
witnesses.  See Johnson v. State, 23 S.W.3d 1, 14 (Tex.
Crim. App. 2000).  

The
State’s case rested, in large part, on McArter’s testimony that Appellant
possessed the tanks. The police found the anhydrous ammonia in unapproved tanks
amid copious other evidence of the manufacture of methamphetamines in a locked
room that also contained Appellant’s personal possessions.  After reviewing all
of the evidence, we conclude that a rational jury could conclude, beyond a
reasonable doubt, that Appellant exercised care, control, and custody of the
two tanks of anhydrous ammonia.  In light of the other evidence in the home and
the testimony about the manufacture of methamphetamines, the jury could also
conclude that he possessed the Sudafed tablets.  We overrule Appellant’s first
and second issues.

 

Disposition

Having
overruled Appellant’s first and second issues, we affirm the
judgment of the trial court.

 

   
SAM GRIFFITH   

          
Justice

 

 

 

Opinion delivered November 3, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

(DO NOT PUBLISH)









[1] One of the boxes of Sudafed
appeared to still contain medicine in it.  Officers found three or four empty Sudafed
boxes in the trash. 

 





[2] See Tex. Health & Safety Code Ann. §
481.124 (Vernon 2010)